# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AYAT H.,[1] <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, <br> **Acting Commissioner of Social Security,** <br><br> Defendant. | **MEMORANDUM DECISION & ORDER** <br><br><br><br> Court No. 2:22-cv-00267-DBP <br><br> Magistrate Judge Dustin B. Pead |

Ayat H. seeks judicial review[2] of the decision of the Acting Commissioner of Social Security (Commissioner) denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act (Act).[3] After careful review of the entire record, the parties' briefs[4] and the relevant legal authorities, the Court concludes that the Commissioner's final decision is supported by substantial evidence and legally sound and is therefore AFFIRMED.

---

[1] Based on privacy concerns regarding sensitive personal information, the court does not use Plaintiff's last name. Privacy concerns are inherent in many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

[2] ECF No. 10. The parties in this case consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[3] 42 U.S.C. § 405(g).

[4] ECF No. 16, Plaintiff's Motion for Review of Agency Action; ECF No. 19, Defendant's Memorandum in Opposition; Plaintiff's Reply Memorandum; ECF No. 20.

## II. FACTUAL BACKGROUND

On October 25, 2019, Plaintiff protectively applied for SSI, alleging disability beginning February 1, 2011.[5] The claim was initially denied on April 8, 2020, and upon reconsideration on September 16, 2020.[6] Thereafter, Plaintiff pursued her disability claim to an April 8, 2021, hearing before Administrative Law Judge (ALJ) Jason Crowell.[7] In a written decision dated April 21, 2021, ALJ Crowell concluded that Plaintiff was not disabled under the Act and denied her application for SSI benefits.[8]

In his written decision, the ALJ applied the five-step sequential evaluation process.[9] At Step 2 of the evaluation the ALJ found Plaintiff's mental impairments non-severe but concluded her obesity and history of a right 5th metatarsal fracture were severe impairments.[10] At Step 4 of the evaluation, the ALJ determined that Plaintiff had the Residual Functional Capacity (RFC)[11] to perform a full range of medium work and, while she was somewhat limited by her impairments, Plaintiff's symptoms did not "wholly compromise" her ability to function.[12] Based

---

[5] Administrative Record Transcript ("Tr.") 26.

[6] *Id*.

[7] *Id*.; 20 C.F.R. § 416.1429 *et. seq.*

[8] Tr. 26-36.

[9] 20 C.F.R. § 416.920(a).

[10] Tr. 28-29; 20 C.F.R. § 416.920(c).

[11] RFC is an administrative finding that an ALJ makes, based on all relevant medical and other evidence of record, about the most a claimant can do despite her impairments. *See* 20 C.F.R. §§ 416.945(a)(1), (a)(3), 416.946(c).

[12] Tr. 35; *see* 20 C.F.R. § 416.967(c).

2

on her age, education, work experience and RFC for a full range of medium work, the ALJ concluded Plaintiff was not disabled under the Act.[13]

### III. STANDARD OF REVIEW

The court's review of the Commissioner's final decision is narrowly limited to a determination of whether substantial evidence in the record, taken as a whole, supports the factual findings and whether the correct legal standards were applied.[14] On review, the agency's factual findings are considered "conclusive if supported by substantial evidence."[15]

The threshold for substantial evidence is "not high"; it is "more than a mere scintilla" of evidence, and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16] In considering the record, the court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."[17] As a result, where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[18]

---

[13] Tr. 36; *see* 20 C.F.R. § 416.920(g).

[14] *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

[15] *Biestek v. Berryhill,* 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g) (internal quotation marks omitted)).

[16] *Id.* at 1154 (internal quotation marks omitted).

[17] *Hendron*, 767 F.3d at 954 (citation omitted).

[18] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## IV. DISCUSSION

On appeal Plaintiff asserts two main errors: (1) the ALJ erred in concluding that Plaintiff's anxiety was not a medically determinable impairment; and (2) the ALJ misinterprets test results related to Plaintiff's pain.[19] Each issue is addressed further herein.

### The ALJ Was Not Required To Include Plaintiff's Mental Limitations In The RFC

When assessing the "paragraph B" criteria,[20] the state agency psychologists determined that Plaintiff had no limitations in concentration, persistence or pace.[21]

In his decision, the ALJ concluded that Plaintiff's anxiety was non-medically determinable and that her depression and post-traumatic stress disorder were non-severe mental impairments.[22] The ALJ further concluded that the prior administrative medical findings of the state agency psychological consultants were "partially persuasive" and that Plaintiff's symptoms of depression would result in "slightly greater restrictions in the area of concentration,

---

[19] ECF No. 16.

[20] When evaluating mental impairment at step three of the sequential evaluation, the ALJ utilizes psychiatric-review technique which require "adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' criteria. . . of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184, at *4; 20 C.F.R. § 416.920a. The "paragraph B" criteria are: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. pt. 404, subpt, P, app. 1, Listing 12.00C.

[21] Tr. 30-32, 35; Tr. 74

[22] Tr. 29. Plaintiff does not assert that the ALJ erred in finding her alleged mental impairments were non-medically determinable impairments and non-severe. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2021) ("We will consider the discuss only those of [Plaintiff's] contentions that have been adequately briefed for our review.").

persistence or pace, than opined by the state agency psychological consultants."[23] Based on these conclusions Plaintiff argues, because the ALJ "admit[ed] that Plaintiff's mental impairments would provide at least some restriction in the area of concentration, persistence or pace" it was an error not to provide for those limitations in the RFC. Upon review, the court disagrees.

First, when assessing the 'paragraph B' criteria, the state agency psychological consultants found that Plaintiff had no limitations in concentration, persistence or pace, while the ALJ determined that Plaintiff had slightly greater or "mild" restrictions.[24] Second, Plaintiff's claim that the ALJ was required to include mental limitations in the RFC because the ALJ determined that Plaintiff had slightly greater or "mild" restrictions in the area of concentration, persistence and pace, is incorrect.[25] The ALJ's paragraph B findings are not the same as the RFC and "mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps" of the sequential evaluation.[26] Here there are no records that indicate Plaintiff had mental health limitations and Plaintiff's invitation for the court to conclude otherwise would amount to an improper reweighing of evidence outside the scope of the court's substantial evidence review.

---

[23] Tr. 35.

[24] Tr. 35 (citing Exhibits 8F, 9F).

[25] Tr. 31 ("In the area of concentrating, persisting or maintaining pace, she has some, but no more than mild limitations due to her medically determinable mental impairments.").

[26] *Suttles v. Colvin,* 543 F. App'x 824, 826-27 (10th Cir. 2013) (unpublished) (*citing Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013); *DeFalco-Miller v. Colvin,* 520 F. App'x 741, 747-48 (10th Cir. 2013); *see also* Social Security Ruling 96-8p, 1996 WL 374184, at *4 ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."); *see also* C.F.R. pt. 404, subpt. P, app. § 12.00(F)(2)(a) (A mild limitation is defined as one that "slightly" limits a claimant).

**The ALJ Appropriately Evaluated Plaintiff's Symptom Complaints**

On March 19, 2020, Plaintiff participated in a consultative examination performed by Dr. Richard Ingebretsen, M.D., Ph.D.[27] Dr. Ingebretsen's report noted the examination was difficult because Plaintiff was so "theatrical[.]"[28] Specifically, Plaintiff "moaned and winced at every turn" and when doing so "seemed to make sure that [Dr. Ingebretsen] was watching."[29] As a result, Dr. Ingebretsen scored Plaintiff as a "5/5 on Waddell's test" which is "suggestive of exaggeration and over-reporting of pain."[30]

On appeal, Plaintiff argues the ALJ improperly analyzed her subjective complaints by focusing on her positive Waddell's test scores as reported by Dr. Ingebretsen. In support, Plaintiff cites to various medical journals arguing that Waddell's signs do not identify malingering but are indicative of a "behavioral health overlay" and consequently the ALJ's conclusions are legally "unfounded".[31] Upon review, the court disagrees.

---

[27] Tr. 33; Tr. 239-242.

[28] Tr. 241.

[29] *Id.*

[30] Tr. 34. Tr. 241.

[31] ECF No. 16 at 6; ECF No. 20 at 3; *see also Minor v. Comm'r of Social Security,* 513 F. App'x. 417, 422 n. 15 (6th Cir. 2013) ("A positive Waddell's sign may indicate that the patient's pain has a psychological component rather than organic causes. While it is a common perception in the litigation arena that these signs are proof of malingering and fraud, they merely describe a constellation of signs used to identify pain in those who need more detailed psychological assessments.") (internal quotation and citation omitted).

First, this is not a case where the ALJ relied solely on Waddell's signs when considering Plaintiff's claims of disabling limitations. Rather, in reaching his conclusions the ALJ also relied on findings from Plaintiff's psychological consultative examination with Keith McGoldrick, Ph.D.[32] Indeed, similar to Dr. Ingebretsen, Dr. McGoldrick also reported that Plaintiff provided conflicting information, displayed incongruent behaviors and often evaded and deflected questioning from the examiner.[33] By way of example, Dr. McGoldrick reported that Plaintiff stated she could not grip objects, but then later moved her fingers and closed her fists with ease.[34] Dr. McGoldrick further noted that Plaintiff was "very dramatic in her behavioral expressions" and contradicted herself frequently (*e.g.* she asserted she had no medical insurance, but later indicated she did have medical insurance; she stated she would get help from her friends, but then claimed that she had no friends; she indicated she needed an interpreter because she could not hear, but then failed to use the interpreter's services for long periods of time).[35]

Second, the RFC assessment must address the Plaintiff's reported symptoms.[36] Here, in challenging the ALJ's reliance on Waddell's test scores, Plaintiff fails to recognize established case law supporting the ALJ's determination that Waddell's signs may be indicative of malingering.[37] As a result, it was reasonable for the ALJ to consider all of Plaintiff's inconsistent

---

[32] Tr. 34; *see* Tr. 248-52.

[33] Tr. 248-49.

[34] Tr. 251.

[35] *Id.*

[36] 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304.

[37] *See Wall v. Astrue,* 561 F.3d 1048, 1056, ftn. 10 (10th Cir. 2009) (citation omitted) (Waddell's signs "used to identify patients who may require detailed psychological assessment" and "three or more [of] Waddell['s] signs are deemed clinically significant."); *Pacheco v. Colvin,* 2014 U.S. Dist. LEXIS

statements and signs, along with the positive Waddell's signs, in concluding that Plaintiff's allegations regarding her limitations were not entirely reliable.[38]

## IV. CONCLUSION

Accordingly, for the reasons stated above, the court disagrees with Plaintiff's arguments and finds that the ALJ's decision is supported by substantial evidence and is legally sound and is therefore AFFIRMED. Plaintiff's Motion for Review of Agency Action is DENIED.[39] Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

Dated this 7th day of November, 2022.

DUSTIN B. PEAD
Chief United States Magistrate Judge

---

29883, at *5 (D. Utah Feb. 13, 2014) ("an examination showed four out of five positive Waddell signs, suggesting symptom exaggeration") (citing 20 C.F.R. § § 404.1529(c)(2), (4)); *see also Jordan v. Comm'r of Social Security,* 548 F.3d 417, 419-20 (6th Cir. 2008) (Waddell signs are "a clinical test for patients with low back pain that can be used to indicate whether the patient is exaggerating symptoms").

[38] 20 C.F.R. §§ 416.929(c)(3)(iv)-(v), (c)(4) (in evaluating a claimant's subjective reports, an ALJ considers objective findings, treatment and inconsistencies).

[39] ECF No. 16.

8